IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| MOISES SANDOVAL MENDOZA, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. 5:09cv86 |
| DIRECTOR, TDCJ-CID Respondent, | § § § § | |

## MOTION TO ALTER AND AMEND JUDGMENT

Comes now the Petitioner, Moises Mendoza, and hereby requests pursuant to Fed.R.Civ.P. 59(e) to alter and amend the judgment in this case. In support of same, he sets forth the following.

### Procedural Background

1. Petitioner Moises Mendoza was convicted and sentenced to death in Collin County, Texas, in June 2005. He appealed his conviction and sentence, and the Texas Court Criminal Appeals ["CCA"] denied relief onNovember 05, 2008.

2. The CCA appointed attorney Lydia Brandt to represent Mr. Mendoza in state post-conviction proceedings. Attorney Brandt raised seven claims for relief, including several aspects of ineffective assistance of trial counsel. The CCA denied relief onall claims on June 10, 2009.

3. This Court then appointed Ms. Brandt as federal counsel for Mr. Mendoza in these federal habeas corpus proceedings.In an initial federal petition, as well as a first amended petition, appointed counselBrandt again raised the same claims for relief contained in the state post-conviction application. This Court denied an evidentiary hearingand denied relief on all

claims raised on September 28, 2012. (Docket #s 64, 65). It later granted in part a Motion to Alter and Amend the Judgment, (Docket #68), and it granted a Certificate of Appealability on four claims. (Docket # 71).

4. While this case was pending in federal court, the U.S. Supreme Court decided two cases of direct relevance to these proceedings, *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Treviño v. Thaler*, 569 U.S. 413 (2013).These cases hold that with respect to ineffective assistance of trial counsel ["IATC"] claims in Texas capital cases, such as those raised in this case, a waiver/default can be avoided in federal court if the state habeas counsel herself provided ineffective assistance of *habeas* counsel in the litigation (or lack thereof) of an IATC claim in state post-conviction proceedings. Because Ms. Brandt represented Mr. Mendoza in both state and federal proceedings, when faced with a motion for the appointment of conflict-free counsel pursuant to *Martinez* and *Treviño*, the Fifth Circuit remanded the case to this Court onMarch 30, 2015, with instructions to appoint separate, unconflicted counsel. This Court appointed the undersigned on May 7, 2015.

**Relevant Facts to This Motion**

5. As the Court is aware, undersigned counsel eventually filed an amended federal petition on November 3, 2017. (Docket #86). Prior to that filing, the undersigned had conducted some investigations and uncovered new facts of relevance both to the IATC claim already in the case, as well as to claims of prosecutorial misconduct involving undisclosed *Brady* evidence and other possible aspects of misconduct by either the prosecution or law enforcement or both.

6. With regard to the latter, the undersigned interviewed and presented the sworn affidavit of former Collin County jail inmate Melvin Johnson, who declared that, contrary to the trial testimony of Collin County jail guard Robert Hinton, Mr. Mendoza had *not* started a fight

with Mr. Johnson, but rather Mr. Johnson himself had started the fight with Mr. Mendoza. More importantly, the fight was instigated *at the direction of jail staff.*

7. "I was definitely the aggressor," Mr. Johnson swears in his affidavit, which was attached as an exhibit to the amended petition. (Docket #86, Exhibit A). "That night I received an extra tray of food which I figured was a bonus for my actions in fighting Mendoza." Mr. Johnson's attestations are simple but powerful: "**I was told that there was trial testimony that Mr. Mendoza was in the rec yard when I was allowed to exit my cell to finish mopping the floor in the day room and Mr. Mendoza attacked me ... this testimony is patently false.**"

8. In short, Mr. Johnson attests that the fight was a "set-up," which, by design or effect, yielded powerful aggravating evidence against Mr. Mendoza. Officer Robert Hinton's trial testimony flatly contradicted Mr. Johnson's affidavit. When asked "who was the aggressor" in the fight, Officer Hinton testified that it was "Inmate Mendoza," When the prosecutor then asked Hinton, "Had inmate Johnson made any moves toward inmate Mendoza at the time?" Hinton replied, "No, sir." (Docket #86 at pp. 33-37),

9. "This testimony is patently false." Or it is not. Either way, the request for further factual development was justified because the facts and circumstances surrounding the incident mattered to the outcome of these federal habeas proceedings.

10. With regard to the issue of IATC, the undersigned made additional allegations not asserted by co-counsel Brandt in state or prior federal proceedings. In particular, the undersigned alleged that trial counsel were ineffective in failing to ever interview or contact inmate Melvin Johnson or conduct any investigation of the jail incident the prosecution presented as aggravating evidence at trial. The undersigned also alleged that trial counsel were ineffective for allowing Dr. Vigen to testify in the first instance. While Ms. Brandt had made other IATC allegations

involving Dr. Vigen's performance and lack of preparedness, she had never alleged that trial counsel were ineffective for having even put Dr. Vigen on the witness stand.

11. This Court precluded any further factual development of these matters, initially denying an evidentiary hearing, (Docket #97), and then again when reaffirming that ruling in its final order denying all relief, (Docket #101). It did so because it found that the newly discovered evidence of false testimony (and possibly greater prosecutorial or law enforcement wrongdoing) would not have prejudiced the outcome of the trial at sentencing, and therefore would not entitle Mr. Mendoza to relief.

12. Mr. Mendoza is entitled to relief on this Motion due to the Court's errors in denying Mr. Mendoza's request for further factual development, in the piecemeal manner in which it assessed prejudice, and in applying the incorrect standard of review to the claims in his Amended Petition.

## Reasons Why The Court Should Grant This Motion

### A. Evidentiary Development is Necessary

13. First, the Court erred in denying any evidentiary development to Mr. Mendoza. As set forth fully in the motion for evidentiary hearing, Mr. Mendoza has made the necessary showing under the applicable rules that he was entitled to full access to this Court's processes, including discovery and subpoena power, to fully develop his claims that the State introduced false testimony at the punishment phase of his death penalty trial, not just by a lay witness, but by a member of the law enforcement community, and that his trial counsel failed to investigate or or uncover this misconduct. These allegations raise greater concerns than just who is telling the truth. In particular, they evince the possibility that the prosecution, which includes all members

of the law enforcement community, conspired to *create* false but highly damaging evidence *in order to obtain a death sentence* against Mr. Mendoza.

14. Mr. Mendoza briefed the jurisprudence governing evidentiary development in his amended petition and in the motion for evidentiary hearing, (Docket #s 86, 95, & 95-1). He incorporates each herein by express reference.

15. As a general matter, under *Townsend v. Sain*, 372 U.S. 293 (1963) (as modified by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)), the decision to grant an evidentiary hearing to a habeas petitioner is "firmly committed to the discretion of the district courts." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). *Townsend* teaches that "the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words, a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." *Townsend*, 372 U.S. at 312–13.

16. Of particular relevance here, the Supreme Court has held that, with regard to allegations of State misconduct such as those alleged here, the AEDPA cannot be read "to bar evidentiary hearings for diligent prisoners with meritorious claims just because the prosecution's conduct went undetected in state court." *Williams v. Taylor*, 529 U.S. 420, 434-35 (2000). *See also Banks v. Dretke*, 540 U.S. 668, 696-704 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."). As the Court held in *Williams*, if the petitioner has "failed to develop the factual basis of his claim in State court," he may still be entitled to an evidentiary hearing if his claim "could not have been previously discovered through reasonable diligence." 28 U.S.C. §

2254(e)(2); *see also Williams*, 529 U.S. at 435. Of course, the State never previously disclosed the scheme alleged here.

17. At the very least, this Court should allow discovery relevant to these issues, instead of allowing the facts to remain frozen and unresolved as they are now. The Court acknowledged as much in its final order: "To be sure, trial counsel's failure to investigate the alleged incident is concerning. Although Mr. Johnson's affidavit alone does not demonstrate that Officer Hinton's testimony was in fact false, an interview with Mr. Johnson may have led to the discovery of additional evidence either demonstrating such falsity." Docket # 101 at p. 23.

18. The Court went on: "[T]he decision not to call a witness without even interviewing the witness is particularly suspect. ... This is especially so here, where Mendoza presented Mr. Johnson's affidavit, demonstrating that Mr. Johnson may have been willing to testify and this his testimony would have benefitted Mendoza's defense." *Id.* at 24.

19. The Court has broad discretion to order discovery and should have done so here, instead of denying relief based on an incomplete and inaccurate factual record. Under Rule 6(a) of the Rules Governing § 2254 Cases, a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Good cause is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracey v. Gramley*, 520 U.S. 899, 908-09 (1997). "[A] district court abused its discretion" in denying discovery that "was 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005).

20. In *Bracy*, a unanimous opinion authored by Chief Justice Rehnquist, the Supreme Court reaffirmed a District Court's duty under Rule 6 to order discovery when a petitioner's

specific allegations suggest that full development of the facts may demonstrate the petitioner's entitlement to relief. The petitioner need not even state a *prima facie* case for relief before seeking discovery. Rather, the Rule 6(a) "good cause" standard permits the use of discovery to *establish* a *prima facie* claim for relief. "Good cause" is shown even if the petitioner's allegations support "only a theory . . . [that] is not supported by any solid evidence" at the time of the discovery request. *Bracy*, 520 U.S. at 908. Indeed, the Supreme Court has recognized that "[i]t may well be . . . that petitioner will beunable to obtain evidence sufficient to" establish the claim, but if specific allegations are made which suggest that petitioner may be able to demonstrate a right to relief, "good cause" is established to permit discovery. *Id.* at 909; *see Blackledge v. Allison*, 431 U.S. 63, 78, 82-83 (1977) (a federal habeas petitioner is entitled to careful consideration and plenary processing of a claim, including full opportunity for presentation of the relevant facts).[1] Given the claims and facts alleged here, Mr. Mendoza has more than established a *prima facie* claim for relief in numerous respects. The law thus supports further discovery into these matters, and he formally requests such discovery here.

21.     For all of these reasons, should the Court grant this motion to alter and amend the judgment, Mr. Mendoza would urge the Court to allow for the taking of depositions before issuing any final ruling or judgment in this matter. At the very least, depositions of all potential witnesses in this matter, to include Officer Hinton and Melvin Johnson, and any other individuals of relevance, should be allowed. Otherwise a matter of grave consequence involving possible prosecutorial manufacturing of testimony in a capital trial will be swept under the rug, allowing

---

[1] In *Blackledge*, the Court specifically addressed Rule 6 and approved the Advisory Committee's discussion of the appropriateness of conducting discovery even before an evidentiary hearing is determined to be necessary. 431 U.S. at 81-82.

any and all ostensible participants to avoid accountability, and sending a man to his execution as a direct result, in part at least, of these actions.

### B. The Court Improperly Assessed IATC Prejudice

22. Second, this Court erred in making the determination that the new evidence presented in the amended petition before this Court did not give rise to an IATC claim because it did not prejudice the outcome. It did so by failing to consider all allegations of prejudice *in toto* when deciding the second prong of the *Strickland* test. It is respectfully asserted that the Court's piecemeal adjudicaton of the prejudice prong was error. Moreover, under a proper prejudice analysis, the Court should have granted relief or, at the very least, further factual development.

23. The Court's final order addressed only the new claims of IATC and assessed them in isolation from one another, both as to performance and as to prejudice. *See* Docket #101. Furthermore, it never considered these two aspects of IATC in tandem with the other IATC allegations from the prior federal petition filed by Ms. Brandt. *Id.* The law makes plain that, such piecemeal adjudication of an IATC claim was error.

24. A habeas applicant establishes deficient performance under the Sixth Amendment by showing "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id. Strickland* thus requires a court to assess the totality of counsel's acts and omissions when deciding whether the representation was deficient.

25. Similarly, *Strickland* also requires that this Court consider the cumulative effect of counsel's deficient performance when determining prejudice. *Id.* at 695. *Strickland*

repeatedly describes a single IATC claim as consisting of multiple errors or omissions that result in prejudice. *See, e.g., Strickland*, 466 U.S. at 693 ("Even if a defendant shows that *particular errors* of counsel were unreasonable . . . the defendant must show that *they* actually had an adverse effect on the defense.") (emphasis added); *id.* at 694 (holding that a petitioner must show "a reasonable probability that, but for counsel's unprofessional *errors*, the result of the proceeding would have been different") (emphasis added).

26. "*Strickland* stands for the proposition that a multifaceted claim of ineffective assistance of counsel must be treated as a single claim," *Johnson v. United States*, 860 F.Supp.2d 663, 756 (N.D. Iowa 2012). The Supreme Court has reaffirmed this principle in its post-*Strickland* decisions. For example, in *Williams v. Taylor*, 529 U.S. 362 (2000), trial counsel's failed to begin preparing for the sentencing phase of a capital case until a week before trial, failed to conduct an investigation "that would have uncovered extensive records graphically describing Williams' childhood," and failed "to introduce available evidence that Williams [had borderline intellectual disability]." 529 U.S. at 395–96 (internal quotation marks omitted). The Court *Williams* identified multiple categories of mitigating evidence omitted by trial counsel's deficient mitigation investigation. *See id.* Nevertheless, the Court treated the omissions collectively as parts of the singular failure of "trial counsel [to] fulfill their obligation to conduct a thorough investigation of the defendant's background." *Id.* at 396.

27. *Wiggins v. Smith* 539 U.S. 510 (2003), also demonstrates the impropriety of splitting up aspects of an IATC claim when determining either deficient performance or prejudicial impact. In *Wiggins*, trial counsel's deficient investigation failed to uncover significant mitigating evidence, including a family history of chronic alcoholism and a childhood rife with emotional difficulties amplified by foster care, food deprivation, and sexual abuse.

*See id.* at 516–17, 525. The Supreme Court found a Sixth Amendment violation based on multiple investigatory omissions, including a failure to investigate the facts behind a social service report and to commission a detailed social history. *See id.* at 525, 538. Yet, the Court in *Wiggins* treated the investigatory omissions of multiple categories of evidence as a single IATC claim: "In order for counsel's inadequate performance to constitute a Sixth Amendment violation, petitioner must show that counsel's *failures* prejudiced his defense." *Id.* at 534 (emphasis added).

28. Finally, *Porter v. McCollum*, 558 U.S. 30 (2009), also addressed an IATC claim in which counsel failed to investigate and present evidence of the client's "abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity[.]" 558 U.S. at 33. *Porter* considered the cumulative impact of all of counsel's failures with respect to multiple categories of mitigating evidence in conducting both the deficient performance and the prejudice analysis. *See id.* at 40 (finding single deficiency in "fail[ure] to uncover and present any evidence of Porter's mental health or mental impairment, his family background, or his military service"); *id.* at 40–41 (considering whether "that deficiency" prejudiced Porter by considering "the totality of the available mitigation evidence") (internal quotations omitted).

29. The Supreme Court's decisions applying *Brady v. Maryland*, 373 U.S. 83 (1963), are also instructive, because the IATC prejudice inquiry mirrors the *Brady* materiality analysis for an unconstitutional prosecutorial suppression of evidence. *See Strickland*, 466 U.S. at 694 ("[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution[.]") (citing leading *Brady* precedent). And in *Kyles v. Whitley*, the Court repeatedly emphasized that both the IATC-prejudice and

*Brady*-materiality analyses were cumulative. 514 U.S. 419, 436 (1995) (after noting equivalency between IATCprejudice and *Brady* materiality, explaining that, "[for materiality purposes], suppressed evidence [must be] be considered collectively, not item by item"); *id.* at 436 n.10("We evaluate [the] cumulative effect [of undisclosed evidence] for purposes of materiality separately and at the end of the discussion . . . ."); *id.* at 441 ("The result . . . is incompatible with a series of independent materiality evaluations, rather than the cumulative evaluation required by [precedent].").

30.     The Fifth Circuit has ruled in line with these Supreme Court decisions. Thus in *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999), the Court of Appeals rejected a claim-splitting or piecemeal approach to IATC claims: "The Director's argument may be reduced to the premise that deficient performance occurring at the guilt phase of a capital trial may not be deemed to prejudice a capital defendant during the punishment phase of a capital trial." 194 F.3d 586, 619 (5th Cir. 1999). The court declined to erect any partition between the IATC allegations:

> We reject this notion. When, as here, the same jury considered guilt and punishment, the question is whether the *cumulative errors* of counsel rendered the jury's findings, either as to guilt or punishment, unreliable. *See Strickland*, 104 S. Ct. at 2064 (relief is appropriate when "the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable").

*Id.* (emphasis added). Thus, the Fifth Circuit considered the totality of trial counsel's failures when deciding whether Moore was entitled to relief on his IAC claim:

> [T]aken together, counsel's failure to investigate Moore's proposed defense by interviewing and preparing for the state witnesses to Moore's extraneous conduct, counsel's inexplicable and illogical failure to require submission of exculpatory language in Moore's confession together with the inculpatory language submitted to the jury, counsel's damaging cross-examination of Officer Autrey, which in and of itself established most elements of the case-in-chief against Moore, and counsel's complete failure to either investigate, develop, or present available and potentially availing mitigating evidence supporting counsel's argument that the

shooting was accidental, during the punishment phase of Moore's trial, including counsel's failure to offer an unredacted and available copy of Moore's purported confession in support of counsel's closing argument during the punishment phase that the shooting was accidental, *are sufficient to demonstrate prejudice within the meaning of Strickland.*

*Id.* at 621–22 (emphasis added).

31. The Fifth Circuit has also addressed whether trial counsel was deficient "because he failed to interview or investigate crucial witnesses in the case, including: (a) alibi witnesses; (b) eyewitnesses to the crime; and (c) the codefendant who offered to exonerate [the defendant]." *Bryant v. Scott*, 28 F.3d 1411, 1414 (5th Cir. 1994). The Court did not divide these allegations into entirely separate IATC claims, but rather treated the allegations as a single claim. *See id.* ("We review Bryant's *claim* of ineffective assistance of counsel under the standards announced by the Supreme Court.") (emphasis added); *id.* at 1415 ("In reviewing Bryant's ineffective assistance *claim* . . . ") (emphasis added). Ultimately, the Fifth Circuit decided only the performance prong:

> [W]e hold that counsel's failure to investigate alibi witnesses and interview eyewitnesses is unprofessional conduct falling below the standard of a reasonably competent attorney practicing under prevailing professional norms. [Counsel]'s *representation*, therefore, fails the performance prong of the *Strickland* test, and we remand for a determination of whether counsel's defective performance prejudiced Bryant's case.

*Id.* at 1419–20 (footnotes omitted) (emphasis added). The Fifth Circuit considered *all* of counsel's omissions when assessing the performance prong, and directed the District Court to consider whether counsel's multiple omissions resulted in *Strickland* prejudice.

32. Other circuits have similarly so held. *See, e.g, United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) ("[E]xamining an [IATC] claim requires the court to consider 'the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the

evidence in the case.'") (quoting *Lundgren* v. *Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)); *Goodman* v. *Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006) ("Rather than evaluating each error in isolation, . . . the pattern of counsel's deficiencies must be considered in their totality."); *Henderson* v. *Frank*, 155 F.3d 159, 165 (3rd Cir. 1998) ("The Supreme Court has warned that judges should not misread habeas petitions in order to split single claims and conduct separate exhaustion analyses for each.") (citing *Engle* v. *Isaac*, 456 U.S. 107, 124 n.25 (1982)); *cf. Mak* v. *Blodgett*, 970 F.2d 614, 622, 624–25 (9th Cir. 1992) (finding, with respect to "cumulative errors . . . in the sentencing phase," that "[w]e do not need to decide whether these deficiencies alone meet the prejudice standard because other significant errors occurred that, considered cumulatively, compel affirmance").

33. In this case, respectfully, this Court failed to consider all aspects of Mr. Mendoza's IATC claim cumulatively, both with respect to deficient performance prong and regarding prejudice. This erroneous approach infected both the Court's analysis and its final judgment. For example, the Court failed to consider that the same trial counsel who didn't bother to talk to *anyone* to explore or investigate the aggravating evidence of jail violence – evidence *of crucial and direct relevance to the future dangerousness special issue* – also presented the testimony of a psychologist who took the stand and gave extremely damaging and false characterizations of Mr. Mendoza. *See*, Docket # 86 at pp. 11-18 (citing Dr. Vigan's testimony that Mr. Mendoza had a pattern of "chronic lying," an "explosive temper," was "angry and reactive and disrespectful," that he had "assaulted his own mother in their home," and "stole from her" and numerous other family members and friends, that he is "sneaky and resourceful" and "takes pleasure" in hiding things from jailers, and in general, that Mr. Mendoza was "a very dangerous individual." Docket #86, Amended Petition at pp. 11-18. And these are merely the

allegations of IATC that have come to light in the course of these remand proceedings.

34. The new claims of ineffective assistance of trial counsel must be considered together, and cumulatively with all of the *other* errors and omissions of counsel already before the Court. In that connection, it is noteworthy that this Court already granted a Certificate of Appealability on those IATC claims, making clear that the issue of trial counsel's ineffectiveness was already a debatable one. *See* Docket #71 (granting a Certificate of Appealability on IATC claims raised by co-counsel Brandt prior to the remand).

35. When these already-debatable IATC allegations are combined with the new and arguably stronger ones – that it was ineffective for trial counsel ever to call Dr. Vigen to testify in Mr. Mendoza's case, and that it was ineffective not to investigate and rebut crucial aggravating evidence – the ineffective assistance of Mr. Mendoza's trial counsel is manifest. This is especially true given the sentencing-phase consequences of these two newly-raised counsel failures.

36. The new information about the jailhouse fight brought to light by the Johnson affidavit caused this Court to register its "concern." Docket # 101 at p. 23. When considered alongside all of Mr. Mendoza's other allegations of his trial counsel's ineffectiveness, especially ones that the Court already found worthy of further review, they entitle Mr. Mendoza to relief.

### C. The Court Erred in Failing to Conduct *De Novo* Merits Review

37. Third and finally, as set forth more fully below, Mr. Mendoza respectfully asserts that the Court applied the wrong standard of review when assessing his new claims. The law makes plain that this Court should have reviewed the new, unexhausted claims *de novo*. The Court's order appears to have applied this standard. It never cited that standard, and it appears to have deferred substantially to the conclusions of the state habeas court.

38. For example, in its final order, the Court quoted from and cited extensively to the state habeas court findings and conclusions with respect to the IATC claim raised by Ms. Brandt, first in state post-conviction proceedings and then in Mr. Mendoza's first federal habeas petition. Docket # 101 at pp. 16-18. The Court expressly noted that those state-court conclusions "further inform this decision" with regard to the IATC claims as well as claims of ineffective assistance of state habeas counsel. *Id.* at 16. Any deference to the state court conclusions or findings was and is in appropriate in this proceeding.

39. Section 2254(d) is inapplicable when the state courts did not adjudicate the merits of a claim, and this failure is not attributable to the petitioner.

> With respect to claims that were not adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *See Chadwick v. Janecka*, 312 F.3d 597, 606 (3rd Cir. 2002) (if state court misunderstood the nature of a properly exhausted claim and thus failed to adjudicate that claim on the merits, AEDPA's deferential standards of review are inapplicable). Instead, we review those claims under pre-AEDPA standards of review. *See Jones v. Jones*, 163 F.3d 285, 299–300 (5th Cir.1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits); *see also Chadwick v. Janecka*, 312 F.3d at 605–06; *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001); *Weeks v. Angelone*, 176 F.3d at 258.

*Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003). *See also Medellin v. Dretke*, 544 U.S. 660, 679–80 (2005) (O'Connor, J., dissenting from dismissal of *certiorari* as improvidently granted, joined by Stevens, Souter and Breyer, JJ.) ("The Texas court's disposition of Medellin's Vienna Convention claim is not entitled to deference under § 2254(d), and thus should not constrain a final decision in federal court about whether he deserves habeas relief . . . . The Texas court neither asked nor answered the right question: whether an individual can bring a claim under *this* particular treaty. Accordingly, any consideration of Medellin's Vienna Convention claim for habeas relief in federal court … must proceed *de novo*."); *Warren v. Baenen*, 712 F.3d 1090, 1098 (7th Cir. 2013) (§ 2254(d) does not apply to petitioner's ineffective assistance claim

because state court of appeals did "not fully address the ineffective assistance issue" and instead "decided a related, but distinct, issue"); *Campbell v. Bradshaw*, 674 F.3d 578, 596 (6th Cir. 2012) ("It appears that, when considering the trial court's ruling, the Ohio Supreme Court misconstrued Campbell's argument. Although recognizing that Campbell argued that 'the trial judge precluded him from presenting evidence of [the] mitigating factor [of] . . . voluntary intoxication,' the Ohio Supreme Court rejected this claim on grounds that the trial court was not required to instruct on specific non-statutory mitigating factors . . . . However, Campbell broadly claims that the trial court effectively prevented him from arguing voluntary intoxication—not that the trial court merely failed to give an instruction on voluntary intoxication. Because, through no fault of his own, the state courts did not reach the core of Campbell's argument, we review this claim *de novo*.").

The Fifth Circuit has held on more than one occasion that when there is no state court adjudication of the merits of a claim, *de novo* review is mandated. *See e.g.*, *Gonzales v. Thaler*, 643 F.3d 425, 429–30 (5th Cir. 2011) (§ 2254(d) is inapplicable when "the state courts never adjudicated [the] federal due process claim on the merits" because "the state habeas court dismissed Gonzales's due process claim on the belief it had already been adjudicated on direct review . . . . The direct appeal, however, had decided only a state-law evidentiary claim."); *Crawford v. Epps*, 531 Fed. App'x 511, 516 (5th Cir. 2013) (§ 2254(d) is not applicable when "the Mississippi Supreme Court interpreted Crawford's Sixth Amendment claim as arguing that he was not given the opportunity to 'confer with counsel' prior to or during the psychological examination . . . . The state court "did not understand Crawford to argue that 'there either was no counsel at the time of the examination or counsel was given no notice of the examination'"); *see also Appel v. Horn*, 250 F.3d 203, 210 (3rd Cir. 2001) (§ 2254(d) is not

applicable because "the Pennsylvania Supreme Court's analysis of this claim always characterized the claim as alleging ineffective assistance of counsel, and not constructive denial of counsel. The two claims, of course, are different.").

40. Here, none of the IATC allegations asserted in the amended petition, nor the prosecutorial misconduct claim, were raised in state court. Clearly, there has been no adjudication on the merits of these claims.

41. Moreover, without deferring to the state court finding, it is clear Mr. Mendoza has made out a sufficient allegation of state habeas counsel ineffectiveness to warrant full merits review of all newly-alleged IATC and misconduct claims.

In these circumstances, absent either a merits adjudication in state court or a procedural default in federal court, the law makes plain: this Court's review of these allegations must be conducted *de novo*.

## Conclusion

42. For all of the reasons set forth herein, and based upon all substantive pleadings filed by Petitioner in this case, incorporated herein by express reference, Mr. Mendoza respectfully requests that this Court grant this motion to alter and/or amend the judgment and grant factual development, as requested, before issuing a final judgment in the case.

Respectfully submitted,

/s/
Jeff L. Haas
Attorney at Law
Texas Bar No. 08659600
100 East Ferguson, Suite 908
Tyler, Texas 75702
903-593-8338

903-593-8330 (fax)
jhaas@tyler.net
Attorney for Petitioner
Moises Sandoval Mendoza

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing Motion to Alter and Amend Judgment through the Court's CM/ECF system, which will provide electronic notification of the filing to counsel for all parties on this 11th day of December, 2019.

1. Tomee.Heining@ texasattoneygeneral.gov

/s/
JEFF L. HAAS
Jeff L. Haas
Attorney at Law
Texas Bar No. 08659600
100 East Ferguson, Suite 908
Tyler, Texas 75702
903-593-8338
903-593-8330 (fax)

Attorney for Petitioner
Moises Mendoza