**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| MOISES SANDOVAL MENDOZA, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> LORIE DAVIS, ) <br> Director, ) <br> Texas Department of Criminal Justice, ) <br> Correctional Institutions Division ) <br> ) <br> Respondent. ) | Civil Action No. 5:09-cv-00086-RWS |

**REPLY IN SUPPORT OF PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT**

*ORAL ARGUMENT REQUESTED*

Mr. Mendoza respectfully submits that this Court should reconsider its denial of his amended habeas petition and grant him habeas relief or further evidentiary development. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). With his life in the balance, Mr. Mendoza's counsel chose to call a mitigation "expert," Dr. Mark Vigen, who proved the prosecution's case. That decision could not have been the product of strategic judgment, nor was state habeas counsel's failure to raise this claim. Separately, trial counsel's failure to investigate one of the State's most important "future dangerousness" witnesses not only prejudiced Mr. Mendoza but also left a glaring hole in the record. At a minimum, this Court should issue a Certificate of Appealability (COA), as it did for Mr. Mendoza's similar habeas claims.

    A.    **Mr. Mendoza's Motion is Timely**

As Mr. Mendoza has explained, Respondent's argument that Mr. Mendoza's Rule 59(e) motion is untimely is incorrect and inconsistent with the plain text of the Federal Rules. *See* ECF 115. In brief, this Court has not yet entered a "judgment" under Rule 58(a), so Mr. Mendoza's motion was early, not late—it should be construed as an interlocutory motion to reconsider (which also avoids any second-or-successive issue). At worst, this Court should enter judgment as Mr. Mendoza suggested, *see* ECF 106, which would then make Mr. Mendoza's motion timely. Either way, this Court has the authority to reconsider its order of November 14, 2019. ECF 101.

    B.    **Mr. Mendoza is Entitled to Relief**

To impose a sentence of death, the jury was required to find: (i) that Mr. Mendoza "would commit criminal acts of violence that would constitute a continuing threat to society," and (ii) there were no mitigating circumstances that warranted sparing his life. RR 25:19; *see* Tex. Code Crim. Pro. art. 37.071, § 2(b)(1), 2(e). If even one juror had dissented on a single

special issue, the death penalty could not have been imposed. RR 25:15-16; Tex. Code Crim. Pro art. 37.071, § 2(g). Trial counsel's errors made that impossible.

    1.    <u>Dr. Mark Vigen</u>

Whether mitigating circumstances warrant sparing a defendant's life is one of the weightiest decisions a juror can make. It necessarily involves "a moral inquiry into the culpability of the defendant." *Saffle v. Parks*, 494 U.S. 484, 492-93 (1990) (quotations omitted). Yet Mr. Mendoza's own expert essentially told the jury that Mr. Mendoza's life was not worth sparing. The Court need look no further than Dr. Vigen's "first opinion"—i.e., that Mr. Mendoza has "no . . . inner self" or "inner identity" and that he lacks an "internal compass." RR 24:117-18; *see* RR 24:130 ("there's an emptiness inside him"). If this were testimony from the prosecution, it would be understandable; that a capital defendant's own expert (on direct examination, no less) told the jury he was not a full person is "inexcusable." *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000).

The rest of Dr. Vigen's testimony was no better. He testified that the "traditional" "factors" supporting mitigation (e.g., violence, abuse, lack of a role model) were "just not present." RR 24:187-88; *see id.* at 155-56, 186. And, as if to put a fine point on the absence of mitigation, Dr. Vigen testified that there was "something missing"—namely, an explanation for why Mr. Mendoza killed Ms. Tolleson. RR 24:187; *see Combs*, 205 F.3d at 288 (finding deficient performance where the defendant's only expert "helped the prosecution to establish one of the elements of its case in chief"). This is not Mr. Mendoza's post hoc gloss on the evidence; on the contrary, it is exactly how the prosecution argued the evidence in closing. *See* RR 25:25 ("Dr. Vigen looked and searched to try to find someone, something that caused him to do this. He couldn't find it. He said it was missing. Where was it?"). In fact, one of Mr. Mendoza's jurors (without whose vote the death penalty could not have been imposed) observed that Dr.

Vigen's testimony "only helped the DA because he could not explain why the defendant did what he did." 1 SCHR 273.

Dr. Vigen also proved the prosecution's case on the future dangerousness special issue. Despite the fact that Dr. Vigen admittedly did not "have a lot of direct experience" with the Texas correctional system, counsel offered his opinion that the State could "house and incarcerate Moises in such a manner that he will be a low or minimum risk for future violence." RR 24:127. To start, counsel should have known that this opinion was legally defective because Texas courts repeatedly have rejected "prison society" as the lens for future dangerousness. *Buntion v. State*, 482 S.W.3d 58, 68 (Tex. Ct. Crim. App. 2016); *Lucio v. State*, 351 S.W.3d 878, 902-03 (Tex. Ct. Crim. App. 2011). Much worse, Dr. Vigen conceded the issue that actually matters under Texas law: He "certainly agree[d]" with the prosecution "that in a free society [Mr. Mendoza] is a very dangerous individual." RR 24:178. The prosecution thus argued in closing that "[h]is very own witness, Dr. Vigen . . . told you that this Defendant is dangerous in society . . . So you know the answer to that question." RR 25:21. If counsel was deficient in *Buck v. Davis* for offering testimony supporting an (impermissible) *inference* of dangerousness, 137 S. Ct. 759, 775 (2017), then certainly counsel was deficient here for offering testimony that Mr. Mendoza *actually was* a danger. *See also Combs*, 205 F.3d at 288; *cf. McCoy v. Louisiana*, 138 S. Ct. 1500, 1512 (2018) (defense counsel's admission of client's guilt violated Sixth Amendment).

Dr. Vigen also testified that Mr. Mendoza would remain a danger, even in the confines of prison. On direct, he volunteered that Mr. Mendoza's "bad behavior persists now even in jail," RR 24:120, that he continues to "cause[] trouble," *id.*, that he "reacts . . . with anger when he perceives that somebody is criticizing him . . . or if he doesn't get what he wants," *id.*, that he

acts with "an automatic reactivity," *id.* at 120-21, and that he "bo[a]sts about getting away with things, about being sneaky, about not getting caught," *id.* at 120. On cross, Dr. Vigen testified that Mr. Mendoza was "[r]eactive and impulsive," *id.* at 151, that he has an "explosive temper," *id.*, that he acts "without planning" or "thinking," *id.*, and that he had a "pattern of chronic lying," *id.* at 150. This testimony is damning on its face, but it also harmed Mr. Mendoza's case in two fundamental ways. First, it undermined counsel's apparent trial theory that Mr. Mendoza acted the way he did only because he had fallen in with a bad crowd in his life outside of prison. Second, it opened Dr. Vigen up to devastating cross examination, and the case to rebuttal, on (among other things) Mr. Mendoza's prison conduct. RR 24:152, 174-176, 220-262; *see, e.g.*, *Johnson v. Bagley*, 544 F.3d 592, 605 (6th Cir. 2008) ("[I]t is unreasonable … to put an expert on the stand who will directly contradict the sole defense theory and render worthless other helpful testimony." (quotations and alterations omitted)).

To the extent this Court relied on the state court's findings in concluding that trial counsel was not ineffective, Mr. Mendoza respectfully submits the decision was in error. Mr. Mendoza did not raise the claim that counsel was ineffective for calling Dr. Vigen in state court, so no deference is warranted. *See* ECF 104 at 14-17. The far more important point, however, is that none of the strategic reasons relied on by the state court speaks to the issue here. Whether or not trial counsel explained their strategy in selecting Dr. Vigen from among the other experts, the problem here was counsel's lack of professional judgment in directing the *substance* of Dr. Vigen's testimony. There is no plausible strategic justification for offering a witness in a death penalty case whose first substantive opinion is that the defendant has no inner self and who agrees with the prosecution that the defendant is very dangerous to society—whether or not, for example, counsel reasonably determined that Dr. Vigen would have a good rapport with the jury

4

(which would, if anything, only make Dr. Vigen's harmful testimony more believable). "No competent defense attorney would introduce such evidence about his own client." *Buck*, 137 S. Ct. at 775-76; *see Combs*, 205 F.3d at 287-89; *Stevens v. McBride*, 489 F.3d 883, 894-97 (7th Cir. 2007).

Similarly, while it may be a reasonable strategic call to "explain the bad with the good," ECF 101 at 19, that is not what Dr. Vigen did. No part of Dr. Vigen's testimony actually helped Mr. Mendoza. At best, he testified that Mr. Mendoza had "the potential for rehabilitation," RR 24:129, but Dr. Vigen immediately backtracked by volunteering that Mr. Mendoza had only "superficial" remorse, *id*. at 130, and that he "hop[ed]" Mr. Mendoza might recognize the gravity of his crime "years and years and years" from now, *id*. at 131. *See Buntion*, 482 S.W.3d at 67 ("A jury may also infer a defendant's future dangerousness from evidence showing a lack of remorse."). Dr. Vigen's "opinion" also was entirely generic. *See* RR 24:131-32. He offered nothing about Mr. Mendoza to convince the jury that Mr. Mendoza *would be* rehabilitated—and overwhelming testimony to the contrary. *See id*. at 177-78 (conceding that prison "won't always" change a defendant's "internal moral compass"). Recognizing as much, the prosecution began its cross-examination by exploring the violent crimes of other defendants for whom Dr. Vigen presumably had given materially identical testimony. *See, e.g.*, RR 24:134-44, 176-77.

The question is thus whether Mr. Mendoza's state habeas counsel was ineffective for failing to raise this IATC claim. The answer is yes: There is no strategic justification for failing to raise a meritorious (or at least arguably meritorious) claim. *See Washington v. Davis*, 715 F. App'x 380, 385 (5th Cir. 2017) ("The mere fact that state habeas counsel failed to raise two potentially meritorious IATC claims evidences both his ineffectiveness and the prejudice that resulted."); *see also, e.g.*, *Lambert v. Warden Green SCI*, 861 F.3d 459, 473 (3d Cir. 2017)

(similar). This Court held that state habeas counsel was not ineffective because she had already raised "significant concerns regarding trial counsel's selection, preparation and use of Dr. Vigen." ECF 101 at 13. Mr. Mendoza respectfully disagrees with the Court's analysis. That state habeas counsel was aware of the problems with Dr. Vigen's testimony makes her failure to raise this claim all the more inexplicable, especially considering that she raised weaker claims which she later abandoned in federal court. *See* ECF 70 (seeking a certificate of appealability only on claims 1, 2, 4 and 5).

Moreover, the allegations raised by state habeas counsel were different in nature. As this Court observed, "[h]abeas counsel presented Dr. Vigen's problematic testimony as a symptom of" her failure-to-investigate theory. ECF 101 at 13-14. But that is not Mr. Mendoza's allegation here—the allegation is that no reasonable attorney would call an expert in a death penalty case to offer the opinions Dr. Vigen did, whether or not an adequate mitigation investigation was conducted, and whether or not Dr. Vigen was adequately prepared. *See, e.g.*, *Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (noting it is not enough to fairly present a claim in state court "that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made" (quotations omitted)); *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) (noting that although ineffectiveness of counsel is a single ground for relief, habeas counsel must still present "a particular factual basis for the claim" to avoid procedural default). That state habeas counsel marshalled some of the same facts in support of a different theory is of no consequence. *See Johnson*, 712 F.3d at 231; *see also Stevens*, 489 F.3d at 894 (holding similar facts giving rise to unsuccessful claim at guilt phase

gave rise to successful claim at punishment phase). State habeas counsel was ineffective because she knew Dr. Vigen's testimony was devastating and yet she chose not to raise this claim.[1]

This Court never reached the question of prejudice, but Dr. Vigen's testimony was "obviously damaging to the defense." *Combs*, 205 F.3d at 290; *see also, e.g.*, *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). After all, Dr. Vigen testified as an expert and thus his testimony bore "the court's imprimatur," and "[w]hen a defendant's own lawyer puts in the offending evidence, it is in the nature of an admission against interest, more likely to be taken [by the jury] at face value." *Buck*, 137 S. Ct. at 776-77. Even the prosecution recognized the devastating nature of his testimony, which explains why the prosecution referenced it repeatedly in closing. *See Combs*, 205 F.3d at 290-91.[2]

2. <u>Officer Robert Hinton</u>

The Court should also reconsider its denial of Mr. Mendoza's claim related to Officer Hinton's testimony. Trial and state habeas counsel committed grievous error in failing to investigate, discover, and challenge the prosecution's potential use of false testimony—testimony that went to the heart of future dangerousness. Had trial counsel taken *any* steps to investigate, they quickly would have discovered Melvin Johnson's exculpatory account: Officer Hinton's testimony was "patently false," and the State's own employees orchestrated the assault

---

[1] At most, this Court's observation suggests that Mr. Mendoza's claim was adjudicated in state court, in which case state habeas counsel's conduct does not matter because there would be no procedural default. If the Court is of that opinion, then Mr. Mendoza respectfully requests that this Court clarify its prior COA order to explain that Mr. Mendoza's arguments about Dr. Vigen are subsumed within the issues already on appeal. Even under the deferential AEDPA standard that might apply if the issue was adjudicated in state court, moreover, trial counsel was ineffective.

[2] Indeed, we now know there initially was a holdout juror on the issue of future dangerousness where Dr. Vigen's concessions were arguably the most damaging. *See* 1 SCHR 273-74, 278. The jurors were unanimous on the absence of mitigation, which is unsurprising given that Dr. Vigen offered them nothing. *Id*.

7

in which Mr. Johnson, not Mr. Mendoza, was "definitely the aggressor." ECF 86-1 at 1; *see Beltran v. Cockrell*, 294 F.3d 730, 734 (5th Cir. 2002) (noting the "easily discoverable" nature of exculpatory evidence in finding ineffectiveness); *see also Adams v. Quarterman*, 324 F. App'x 340, 350 (5th Cir. 2009) (affidavits constitute "competent evidence" in evaluating prejudice). Reasonable trial counsel could have used this evidence in multiple ways. They could have impeached Officer Hinton, or pursued a standalone *Napue* claim on direct appeal, or the prosecution may have elected not to call Officer Hinton at all knowing he would be subject to devastating impeachment. None of that happened, however, because trial counsel conducted no investigation, leaving an undeveloped record on the veracity of Officer Hinton's testimony.

That contravened professional norms. As the Court previously observed, trial counsel's failure to interview Mr. Johnson or otherwise challenge Officer Hinton's testimony was "concerning" and "particularly suspect," "especially [given that] Mendoza . . . demonstrat[ed] that Mr. Johnson may have been willing to testify and that his testimony would have benefitted Mendoza's defense." ECF 101 at 24; *see also, e.g.*, *Miller v. Dretke*, 420 F.3d 356, 361-64 (5th Cir. 2005); *Beltran* 294 F.3d at 734.

This Court instead rejected Mr. Mendoza's claim on materiality/prejudice grounds, but the Court should reconsider that decision. Like Respondent, the Court reasoned that undermining Officer Hinton's testimony would not have changed the outcome. But Officer Hinton's testimony was uniquely harmful to Mr. Mendoza's case in two important ways. First, it plainly defeated trial counsel's theory that Mr. Mendoza was dangerous when surrounded by his "negative group of peers involved in drugs and alcohol." ECF 34-7 at 5. Officer Hinton's testimony, in other words, undermined the credibility of Mr. Mendoza's "main" defense. *Id*. Second, it was Respondent's only significant example of serious violence once Mr. Mendoza

was incarcerated. The remaining testimony was decidedly weak—"shanks" made out of aluminum foil and a "plastic comb," RR 24:242-44, 247-49, and Respondent's uncorroborated assertion that prison officers thought Mr. Mendoza was "trying to bite them." RR 25:45. This evidence pales in significance compared to Officer Hinton's direct testimony that Mr. Mendoza *instigated* violence in prison, especially where defense counsel could have shown that the incident was orchestrated by prison officials and where impeachment could have cast doubt on the credibility of the prosecution's case. The importance of this evidence to the prosecution's case, by contrast, is confirmed by its prominent role in closing. RR 25:45. There is at least a reasonable probability that one juror would have dissented had Officer's Hinton's testimony been challenged. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").[3]

The Court also discounted the significance of Mr. Johnson's "potential testimony" on the ground that his testimony would be "double-edged." ECF 101 at 27. For three reasons, Mr. Mendoza respectfully disagrees. First, counsel need not have called Mr. Johnson at all. The core error was counsel's failure to investigate. Had counsel done so and uncovered Officer Hinton's false testimony, they could have raised a claim based on misconduct outside the jury's presence, such as a *Napue* claim. Second, if counsel did choose to disclose Mr. Johnson as a witness, Respondent may not have called Officer Hinton in the first place. But none of that happened because counsel failed to investigate and develop the record.

---

[3] The cases cited at pages 25-26 of the Court's opinion are not to the contrary. In *Moody v. Johnson*, 139 F.3d 477 (5th Cir. 1998), the testimony was not "false," *id.* at 484, and the remaining evidence was far more aggravating than that here, *id.*, whereas Officer Hinton's testimony disproved Mr. Mendoza's main theory at trial. And the defendants in *Devoe v. Davis*, 717 F. App'x 419 (5th Cir. 2018) and *Perez v. Quarterman*, 2011 WL 6959946 (W.D. Tex. Dec. 29, 2011), had committed *multiple* murders.

Third, even if counsel had chosen to call Mr. Johnson, there is no basis to conclude that the prosecution would have been allowed to cross-examine him on his extraneous comments that Mr. Johnson was not well liked or that he had used racial slurs. Mr. Johnson would have been called for the sole purpose of rebutting Officer Hinton's narrative. Anecdotal testimony wholly unrelated to that event would have exceeded the permissible scope of cross-examination (among other grounds of inadmissibility). Testimony is "double-edged," moreover, when it is "more harmful than helpful to the defendant" on the question at issue (like Dr. Vigen's testimony). *Reed v. Vannoy*, 703 F. App'x 264, 270 (5th Cir. 2017). Here, it is difficult to see how the value of discrediting Officer Hinton would have been outweighed, for example, by hearsay reports that other prisoners or guards disliked Mr. Mendoza.

At a minimum, this Court should reconsider Mr. Mendoza's request for evidentiary development given the state of the record. *See* ECF 104 at 4-8. Respondent concedes that this Court may order an evidentiary hearing to prove cause and prejudice flowing from state habeas counsel's ineffectiveness. *See* ECF 11 at 10 (citing *Washington*, 715 F. App'x at 385-86). But, Respondent contends, no evidence developed during such a hearing may be used to prove Mr. Mendoza's underlying IATC claim because it would be barred by 28 U.S.C. § 2254(e)(2). That is incorrect. Under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), a prisoner who never received adequate representation in state court is not at fault for state habeas counsel's deficiencies, including any "failure to develop the factual basis" of his claims. 28 U.S.C. § 2254(e)(2); *see Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000) (noting the Supreme Court has "linked the 'failure to develop' inquiry with the cause inquiry for procedural default"). *Martinez* acknowledged that prisoners deprived of adequate state post-conviction counsel are "in no position to develop the evidentiary basis for a claim of ineffective

assistance, which often turns on evidence outside the trial record." 566 U.S. at 12. And *Trevino* specifically listed the wealth of new evidence that would have to be considered if the petitioner's claim were not treated as defaulted. 569 U.S. at 419. Respondent also asserts that further factual development is futile, ECF 111 at 12, but relies solely on the mistaken view of the trial evidence disproved above.[4]

### C. At A Minimum, This Court Should Issue A Certificate Of Appealability

At an absolute minimum, the Court should grant a COA on Mr. Mendoza's claims. Respondent argues otherwise, but her argument amounts to a recitation of the Court's merits opinion. *See* ECF 113 at 5-8. Whether a COA should issue, however, "is not coextensive with a merits analysis." *Buck*, 137 S. Ct. at 773-74.

To warrant a COA, Mr. Mendoza was required to show only "that jurists of reason could disagree" with the Court's holdings, or "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* (quotations omitted). Under this standard, the Court may deny a COA only if the merits are "not even debatable." *Id.* at 774; *see also Washington*, 715 F. App'x at 385 (holding that even where "[t]he State argues ... with persuasive force ... that the [petitioner's] claims are unlikely to succeed on the merits" a petitioner's "claims are 'debatable' and thus warrant a COA"). And in undertaking this analysis, "[a]ny doubt regarding whether to grant a COA" must be resolved in Mr. Mendoza's favor, especially when "the severity of the penalty" is factored in. *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

---

[4] Respondent's final argument—i.e., that the Court did not err in refusing to consider *in toto* the prejudice from all IATC allegations because meritless IATC claims cannot be cumulated— also fails. ECF 111 at 13. As demonstrated, Mr. Mendoza's allegations are meritorious and, therefore, the equation here is not "twenty times zero equals zero." *Id.* at 15.

11

For all the reasons above, this is not a debatable case—the Court should grant Mr. Mendoza relief. Certainly, Mr. Mendoza's claims are not foreclosed by a defect so obvious that he should not be encouraged to proceed further.

Take the decision to call Dr. Vigen. Respondent asserts in conclusory fashion that Mr. Mendoza has not "demonstrate[d] the debatability" of the Court's rulings, ECF 113 at 6, but she fails to grapple with Dr. Vigen's testimony altogether. That is understandable. No reasonable lawyer in any criminal case—much less in the sentencing phase of a capital case—would call an expert to testify (among other things) that the defendant: (i) has no inner compass; (ii) has only superficial remorse; (iii) is very dangerous to society; (iv) has an explosive temper; (v) is a chronic liar; and (vi) will continue to cause trouble for years. It bears repeating: Dr. Vigen was supposed to be a witness for Mr. Mendoza, not the prosecution. Yet his testimony reads as if the opposite were true. Mr. Mendoza should not be foreclosed from proceeding further on his claim that trial counsel was ineffective for presenting this damaging testimony.

Respondent emphasizes state habeas counsel's procedural default, arguing that state habeas counsel was not ineffective for failing to raise this claim. ECF 113 at 6. But because Mr. Mendoza's underlying IATC claim is at least debatable, it must also be true that "original state habeas counsel was at least debatably ineffective in failing to raise it"—a reasonable habeas lawyer would raise a potentially meritorious claim. *Murphy v. Davis*, 732 F. App'x 249, 266 (5th Cir. 2018). Respondent has no explanation, moreover, for why state habeas counsel would fail to raise this claim, especially where she was aware of the impact of Dr. Vigen's testimony and raised other, weaker claims for relief. There is none.

The same is true of counsel's "concerning" and "particularly suspect" failure to investigate Officer Hinton's false testimony. ECF 101 at 23–24. Contrary to Respondent's

12

argument, Mr. Mendoza is not seeking a COA on the underlying, defaulted *Napue* claim. ECF 113 at 7. Instead, Mr. Mendoza's allegation is that trial counsel was ineffective under *Strickland* for not investigating Officer Hinton's testimony, which precluded counsel from raising a possible *Napue* claim or impeaching one of the prosecution's most important witnesses.

Respondent's opposition proceeds from the faulty premise that Mr. Mendoza's claim was "meritless." ECF 113 at 8. But here again, she fails to engage in a meaningful analysis of the debatability of Mr. Mendoza's claim. She recites the Court's finding that there was other evidence of future dangerousness, but that evidence was far from overwhelming, as demonstrated above. It is at least arguable that a single juror would have harbored reasonable doubts about Mr. Mendoza's future dangerousness if only counsel had investigated and undermined (or prevented altogether) the testimony of this crucial witness.[5] And because Mr. Mendoza's underlying IATC claim was at least debatable, this Court should "also conclude that [his] original state habeas counsel was at least debatably ineffective in failing to raise it." *Murphy*, 732 F. App'x at 266.

The Court should issue a COA for another, more fundamental reason. "Ineffective assistance of counsel is a single ground for relief, no matter how many failings the lawyer may have displayed." *Pole*, 570 F.3d at 934 (quotations and alterations omitted). And the failings Mr. Mendoza challenges are closely related to the ones on which this Court has already granted a COA. For example, though Dr. Vigen's devastating testimony independently warrants relief, it was still a natural consequence of trial counsel's failure to "investigate and develop crucial mitigating evidence." ECF 71 at 2. The point here is not that this Court should cumulate error,

---

[5] At the least, it is debatable whether Mr. Mendoza should have been authorized to conduct discovery and further develop the record.

13

*see* ECF 113 at 8-9, but rather that denying a COA on the present claims would artificially prevent the Fifth Circuit from fully considering a single claim of ineffectiveness this Court has already held should be addressed.  Of course, if the Fifth Circuit were to find ineffective assistance in more than one aspect of trial counsel's representation, then the court would be authorized to consider these errors together.  Denying a COA would make that impossible for Mr. Mendoza's current claims.

Mr. Mendoza's current claims have never been heard on the merits by any court save this one.  Resolving all doubts in his favor, and considering the penalty imposed, this Court should at least issue a COA and allow Mr. Mendoza to proceed to the Fifth Circuit on all aspects of counsel's ineffective representation.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its denial of Mr. Mendoza's amended habeas petition or, in the alternative, grant a COA on the instant claims.

Respectfully submitted,

/s/ Jason Zarrow
Jason Zarrow
California Bar. No. 297979
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899
213-430-8369
213-430-6407 (fax)
jzarrow@omm.com
*Attorney for Petitioner*
*Moises Sandoval Mendoza*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing motion through the Court's CM/ECF system, which will provide electronic notification of the filing to counsel for all parties on this Seventh day of February, 2020.

<pre>                                        /s/ Jason Zarrow
                                        Jason Zarrow
                                        California Bar. No. 297979
                                        O'Melveny & Myers LLP
                                        400 South Hope Street
                                        Los Angeles, California 90071-2899
                                        213-430-8369
                                        213-430-6407 (fax)
                                        jzarrow@omm.com
                                        *Attorney for Petitioner
                                        Moises Sandoval Mendoza*</pre>